### THE CITY OF CHESTER.

### NORFOLK. & C. R. CO. v. THE CITY OF CHESTER.

(District Court, E. D. Virginia. June 24, 1895.)

COLLISION—STEAMERS IN HARBOR—CROSSING COURSES.

> Only a dire emergency will excuse a steamer navigating a harbor from complying with rule 16, which requires her to keep out of the way of another steamer with which she is on crossing courses, when the latter is on her starboard hand; and she is not excused by the fact that a third steamer is on crossing courses with her, in such a position as to be required to keep out of her way, there being sufficient room for both to avoid danger by a timely observance of the rule.

This was a libel by the Norfolk & Carolina Railroad Company against the steamboat City of Chester to recover damages for a collision.

Sharp & Hughes, for libelant.
Richard Walke and A. P. Thom, for respondent.

HUGHES, District Judge. This libel is brought for damages from a collision in Norfolk harbor on the morning of the 20th of January, 1894, between the steamtug Pinner's Point, belonging to the libelant, and a barge in tow of the steamboat City of Chester, the Pinner's Point and the barge striking each other port to port. The Pinner's Point had left Trugien's wharf, at the Portsmouth side of the harbor, and was making for the Norfolk & Carolina Company's wharf, on the Norfolk side. The Bay Line steamers' wharf and the Boston steamers' wharf are north of the Norfolk & Carolina wharf, for which the Pinner's Point was heading at the time of the collision. South of that wharf are the wharves of the compress company, the Norfolk & Southern Company, Jones & Lee, and Campbell, and next to Campbell's wharf is the ferry slip. The diagram filed in the evidence shows that the distance between the wharf of the Bay Line boats and the ferry slip is about 2,250 feet, or 750 yards. When the Pinner's Point had got out into the harbor, and had straightened her course for the Norfolk & Carolina wharf, and was abreast of the ferry slip, she saw the City of Chester moving up the harbor with her barge in tow, abreast of the Bay Line wharf, about 750 yards off. She at once signaled the City of Chester with one whistle. At that time the steamtug Martha Helen, with three schooners in tow, was abreast of the ferry slip, moving north down the harbor. She and the Pinner's Point were then abreast of each other, and about equidistant from the City of Chester. Signals had passed between the City of Chester and the Martha Helen, when the Pinner's Point blew her one whistle to the City of Chester. The attitude of the three steamers towards each other at that time was that the Pinner's Point was about four points off the starboard bow of the City of Chester, on crossing courses, and that the City of Chester was five or six points off the starboard bow of the Martha Helen, on crossing courses. In these relative positions, the old rule 19 (now 16) of navigation applied, under which it was the duty of the City of Chester to keep out of the way of the Pinner's Point, and of the Martha Helen to keep out of the way of the City of Chester, the duty of the Pinner's Point being to keep her course. The Georgia v. The Luckenbach, 67 Fed. 619; The Luckenbach v. The Georgia, 1 C. C. A. 489, 50 Fed. 129; The Breakwater, 15 Sup. Ct. 99, 155 U. S. 252.

The evidence does not show that the Martha Helen failed to comply with rule 19. She kept out of the way of the City of Chester, and went clear. The presence of the Martha Helen, in the relations she bore to the other two steamers on the occasion, could not have caused any change of duty on the part of the two other steamers. The distance was great enough to prevent an emergency, and I do not see from the evidence that any emergency arose to alter the duty of either of the three steamers. The collision occurred in consequence of the City of Chester's failing to keep out of the way of the Pinner's Point,—failing, in fact, to do anything tending to keep her out of the way of that steamer. The approach of the Martha Helen could not excuse the City of Chester from performing her

duty. The distance between the Helen and the Chester was ample to allow both the Helen to keep out of the way of the Chester, and the Chester to keep out of the way of the Pinner's Point. The Pinner's Point kept her course as directly as was practicable. The Chester failed to port her helm, when signaled by the Pinner's Point, and, by so failing, produced the collision. She could have kept out of the way of the Pinner's Point, and did not.

There is no more important rule of navigation for harbors than rule 19 (now 16). The enforcement of this rule by the courts is an imperative duty. Nothing but the closest and direst emergency can excuse a steamer running in a harbor from scrupulously obeying rule 19 (16). I must enforce it in this case, and hold that the collision complained of was from the fault of the City of Chester.

I will merely allude to one or two matters presented in the evidence. Some of the witnesses express the opinion that the Pinner's Point and the Chester were in the seventh situation when the Pinner's Point blew its one whistle. This is equivalent to contending that the Pinner's Point was abeam of the Chester at that moment. On the contrary, one vessel was abreast of the ferry slip, and the other abreast of the Bay Line wharf, having the first-named steamer five points on her starboard bow, and about 750 yards distant. Obviously, the seventh situation was out of the question.

It is also intimated on behalf of the respondent that the Pinner's Point, in order to avoid the Martha Helen, deviated from her direct course after sounding her signal to the Chester. This fact is not proved, and is not probable. There was no necessity for swerving to port.

The Pinner's Point was full abreast of the Helen when she signaled the Chester, had no tow, was moving at a greater speed than the Helen, and was under no necessity of swerving at all to keep out of the way of the Helen. I think the letter S, which figures in the evidence, is more a thing of fancy than practicable fact. The only influence which the Helen had on the Pinner's Point was to prevent the latter from swerving more to starboard than she was bound to do, and which the failure of the Chester to port her helm might have induced her to do. If the Helen had not been to starboard of the Pinner's Point after the Pinner's Point and the Chester came into relations with each other, the persistent neglect by the Chester of her own duty under rule 19 might have suggested a starboard movement to the Pinner's Point as a means of relieving the situation forced by the City of Chester, but the position of the Helen prevented this. The Pinner's Point held her course under rule 19 and the Chester committed the fault of failing to keep out of her way. I will sign a decree for the libelant.